# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

PEOPLE v NELSON

Docket No. 166297. Argued on application for leave to appeal December 4, 2024. Decided March 28, 2025.

Natalie C. Nelson was convicted by a jury in the Wayne Circuit Court of felonious assault, MCL 750.82; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and domestic violence, MCL 750.81(2). Defendant and her boyfriend, Aaron Lewis, were in defendant's home when defendant discovered that Lewis was in contact with one of his cousins, whom defendant believed had engaged in child sexual abuse. Lewis alleged that after making this discovery, defendant grabbed him and attempted to hit him and to throw an ashtray at him, while defendant alleged that Lewis grabbed her, jumped on her, strangled her, and said: " 'Don't ever ask me about my fucking cousin ever again. I will kill you.' " Defendant told Lewis to leave the home, but he refused to leave. Defendant testified that Lewis pushed her into her bed railing, at which point defendant retrieved a firearm that she kept underneath her bed. Defendant again told Lewis to leave, but he refused. At some point, Lewis packed his things and went down the stairs. There was conflicting testimony about whether defendant kicked Lewis in the back as he left the home. The prosecution charged defendant with felonious assault, felony-firearm, and domestic violence. At trial, defendant presented a theory of self-defense, while Lewis characterized defendant as the aggressor. On direct examination, defendant sought to tell the jury that Lewis had threatened to kill her before she retrieved the firearm, but the prosecution objected on the basis that whatever she was going to convey was inadmissible hearsay. The trial court agreed and sustained the objection. On defendant's fifth recross-examination, the prosecution asked defendant whether she had asked to see Lewis's cell phone, and she responded that she had not, that she had asked Lewis whether his cousin had called him, and that Lewis had then jumped on top of her, strangled her, and threatened to kill her. During closing arguments, the prosecution argued that defendant had retrieved her firearm to intimidate Lewis, not because she was in fear for her life. Defense counsel argued that defendant had retrieved the firearm solely to protect herself and her two children from being attacked. The trial court instructed the jury to consider all the evidence that had been presented but not to consider any testimony that was "stricken," and the trial court included a self-defense instruction. Defendant was convicted, and the trial court, Kelly Ramsey, J., sentenced defendant to three years' probation for her felonious-assault conviction; two years' imprisonment for her felony-firearm conviction with 149 days' jail credit; and 93 days, time served, for her domestic-violence conviction. Defendant appealed, and on appeal, the prosecution conceded that its objection and the trial court's ruling were erroneous and

that the statement about Lewis's threat on direct examination was not hearsay. In an unpublished per curiam opinion issued on August 31, 2023 (Docket No. 360860), the Court of Appeals, GADOLA, P.J., and BORRELLO, J. (HOOD, J., dissenting), affirmed defendant's convictions, holding that the trial court's error in sustaining the prosecution's hearsay objection was not outcome-determinative because defendant eventually introduced the threat on recross-examination, the jury was instructed to consider all evidence, and jurors are presumed to follow their instructions. Defendant sought leave to appeal in the Supreme Court, and the Supreme Court ordered oral argument on the application, directing the parties to address (1) whether the harmless-error test in *People v Lukity*, 460 Mich 484 (1999), should be refined or amended, and (2) whether—under the *Lukity* standard or otherwise—defendant is entitled to relief for the trial court's erroneous exclusion on direct examination of defendant's testimony regarding a threat made by the victim.

In an opinion by Justice BERNSTEIN, joined by Justices CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

The Court of Appeals majority erred by holding that the trial court's ruling was not outcome-determinative under *Lukity*, given that the threat was central to defendant's self-defense theory and that the trial court did not make clear whether the jury could consider the threat after defendant mentioned it during a recross-examination. A presumption that jurors follow their instructions is not sufficient to cure prejudice when the jurors likely did not know whether they could consider the once-excluded evidence and when the trial court's error necessarily altered how the parties presented their arguments during trial. The Court of Appeals judgment was reversed, and the case was remanded to the Wayne Circuit Court for a new trial.

1. Preserved, nonconstitutional errors are governed by MCL 769.26, which provides that no judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. The *Lukity* Court held that the "affirmatively appear[s]" language in MCL 769.26 creates a presumption that preserved, nonconstitutional error is harmless and that this presumption may be rebutted by a showing that the error resulted in a miscarriage of justice; a miscarriage of justice requires a defendant to establish that it was more probable than not that a preserved, nonconstitutional error was outcome-determinative. The opportunity to revisit the test in *Lukity* was declined.

2. In this case, the reason defendant retrieved her firearm was central to her self-defense theory. Defendant sought to introduce Lewis's statement to demonstrate how the threat affected her state of mind. Without the trial court's error, defendant's testimony would have consisted of Lewis's threat to kill her, along with two incidents of Lewis engaging in violence against her, which would have allowed the jury to view defendant's decision to retrieve the firearm in the context of defendant's belief that Lewis presented a threat of plausible and imminent harm. Although defendant mentioned Lewis's threat on fifth recross-examination, a difference exists in eliciting testimony during direct examination and cross-examination. On direct examination, defendant would have had the opportunity to present a complete theory of her defense to the jury; such an opportunity is necessary when the jury essentially considers a near total credibility contest

between two witnesses. In this case, defendant was only able to convey Lewis's threat to her as a non sequitur on her recross-examination. Moreover, the trial court had expressly instructed both parties not to refer to Lewis's threat. Without defendant's testimony, the evidence presented at trial was inadequate to demonstrate to the jury that defendant was confronted with a deadly threat that would justify her possession of the firearm. Finally, the testimony in question had been excluded at one point during the trial but admitted at a later point in the trial. While the jury instructions that the trial court provided were not inherently in conflict, in this case, the jury was likely confused as to whether it was allowed to consider defendant's testimony during recross-examination about Lewis's threat given that this same testimony had been excluded during defendant's direct examination. The trial court's error in this case deprived defendant of a meaningful opportunity to support her claim of self-defense, paved the way for the prosecution to argue that defendant possessed the firearm merely to intimidate Lewis, and left the jury confused about what it could and could not consider during deliberations. Therefore, this error was more probably than not outcome-determinative under *Lukity*, and the Court of Appeals majority erred by holding otherwise. Defendant was entitled to a new trial.

Reversed and remanded to the Wayne Circuit Court for a new trial.

Justice CAVANAGH, concurring, agreed with the Court's decision to remand this case for a new trial but wrote separately to emphasize a concern that the Court has not directly addressed: whether the Court's interpretation of the standard of review for preserved, nonconstitutional errors under MCL 769.26 announced in *People v Lukity*, 460 Mich 484 (1999), should be revisited given its apparent inconsistency with the standard of review for ineffective assistance of counsel under *Strickland v Washington*, 466 US 668 (1984). A preserved, nonconstitutional error is reviewed to determine whether it is *more probable than not* that a different outcome would have resulted without the error; however, if a nonconstitutional error is not preserved, then it may form the basis of a claim for ineffective assistance of counsel, which is reviewed to determine whether counsel's performance fell below an objective standard of reasonableness and whether, but for counsel's deficient performance, there is a *reasonable probability* that the outcome would have been different. There is a difference between these two standards: a reasonable probability need not rise to the level of making it more likely than not that the outcome would have been different. This difference could incentivize a defendant to intentionally not preserve a nonconstitutional error because a "reasonable probability" standard has a lower threshold for recovery than a "more probable than not" standard. However, because it was unnecessary for the Court to address this issue in this case, Justice CAVANAGH concurred with the majority opinion.

Justice ZAHRA, joined by Chief Justice CLEMENT, dissenting, agreed that the trial court erred by excluding defendant's testimony regarding Lewis's alleged threat as hearsay on direct examination, but Justice ZAHRA would have held that a new trial was not warranted because it was not more probable than not that the error was outcome-determinative under *Lukity*. The jury heard on recross-examination the very testimony that was erroneously excluded by the trial court. Aside from the evidence relating to the threat, the jury also heard even more compelling evidence supporting defendant's self-defense theory in the form of defendant's testimony that Lewis physically attacked her. Despite hearing this evidence, the jury still convicted her, and it would be highly unlikely that admission of the verbal conditional threat on direct examination would have resulted in defendant's acquittal where extensive testimony of a physical assault and

admission of the conditional threat in recross-examination did not. Because Lewis threatened to kill defendant if she talked about his cousin again, the threat was conditional, and it was questionable whether this conditional threat could reasonably place defendant in fear of imminent harm rather than future, contingent harm. Moreover, there was no authority for the majority's proposition that evidence produced on recross-examination is less impactful on a jury than evidence produced on direct examination. Defendant's claim was not that her testimony was excluded; it was that she was unable to admit the evidence in the precise manner that she wished. But defendant was entitled to a fair trial, not a perfect trial. Finally, there was nothing in the record to show juror confusion. Defendant's inability to introduce the threat in more detail on direct examination did not constitute an error requiring reversal under MCL 769.26. The admitted evidence supported the jury's verdict, and there was no reason to believe that the outcome would probably have been different had the testimony of Lewis's threat been admitted on direct examination. Accordingly, Justice ZAHRA would have affirmed the judgment of the Court of Appeals.

Justice THOMAS did not participate because the Court considered this case before she assumed office.

# OPINION

Chief Justice:
    Elizabeth T. Clement

Justices:
Brian K. Zahra
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas

FILED March 28, 2025

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v                            No. 166297

NATALIE CHRISTINA NELSON,

    Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except THOMAS, J.)

BERNSTEIN, J.

In this case, we consider whether the trial court's failure to admit defendant's testimony that her partner threatened to kill her was more probably than not an outcome-determinative error under *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999). Specifically, the trial court erroneously interrupted defendant's testimony and sustained the prosecution's objection that such a statement was improper hearsay. Defendant later made the statement on recross-examination. However, the trial court provided jury instructions

that likely left the jury confused on whether they could consider this testimony. We hold that the trial court's failure to allow defendant to present this testimony about her self-defense theory, coupled with the jury's likely confusion regarding whether it could consider the statement at all, amount to errors that more probably than not were outcome-determinative under *Lukity* that require reversal.

## I. FACTS AND PROCEEDINGS

This appeal arises from an altercation between defendant and her then-boyfriend, Aaron Lewis. Defendant lived in her home with her son and daughter; there is conflicting testimony about whether Lewis also lived in the home with them or if he merely spent part of the week there. Defendant alleges that, on September 10, 2019, she asked Lewis if she could use his cell phone. When she used the phone, defendant discovered that Lewis was in contact with one of his cousins. Defendant claimed she was concerned about this contact because Lewis's cousin had allegedly engaged in child sexual abuse. Defendant confronted Lewis about the contact he had with his cousin. The conversation quickly became contentious, and Lewis alleged that defendant grabbed him and attempted to hit him and to throw an ashtray at him. Defendant alleged that Lewis grabbed her, jumped on her, strangled her, and said: " 'Don't ever ask me about my fucking cousin ever again. I will kill you.' "

Defendant then told Lewis to leave the home. She told him that the relationship was over and that he could not continue physically harming her or her children. But he refused to leave. According to defendant's testimony, he pushed her into her bed railing, at which point defendant retrieved a firearm that she kept underneath her bed. Defendant again told

2

Lewis to leave the home, and he again refused. At some point, Lewis packed up his things and went down the stairs. Defendant followed him. There is conflicting testimony about whether defendant kicked Lewis in the back as he left the home.

The day after the altercation, defendant went to the hospital, complaining of pain in her neck, back, and thighs. That same day, Lewis filed a police report. A few days later, defendant filed her own police report. The prosecution then pursued charges against defendant, charging her with felonious assault, MCL 750.82; possession of a firearm in commission of a felony (felony-firearm), MCL 750.227b; and domestic violence, MCL 750.81(2).

At trial, defendant presented a theory of self-defense. Defendant's son testified that he saw red marks around his mother's neck and, when he asked what had happened to her, Lewis had made a strangling motion. Defendant's daughter testified that she did not see Lewis strangle her mother on the date in question but that Lewis had strangled defendant in the past. Lewis, on the other hand, denied ever strangling defendant. His testimony characterized defendant as the aggressor in this altercation.

On direct examination, defendant sought to tell the jury that Lewis had threatened to kill her before she retrieved the firearm. She began to testify about what Lewis had said, but the prosecution objected to her testimony on the basis that whatever she was going to convey was inadmissible hearsay. The trial court agreed and sustained the objection. In the presence of the jury, the trial court said, "We're not going to get into what he said in response." Defendant sought once more to tell the jury how Lewis threatened her. She again was prevented from telling the jury what was said.

3

On defendant's fifth recross-examination, the prosecutor asked defendant whether she asked to see Lewis's cell phone as soon as she came home that day. She responded:

> No. I seen his name in the phone. And I asked him. I said, "Did Jay call you?" And that's when he jumped on top of me and started to choke me. And he was saying, "Don't ever ask me about my fucking cousin ever again. I will kill you."[1]

When defendant shared Lewis's direct threat, the prosecution did not object to the statement or follow up regarding the statement. The defense also did not seek any follow-up regarding this comment. Therefore, the only time that the jury heard that Lewis threatened defendant's life was in this singular, nonresponsive remark on her fifth recross-examination. Further, the jury heard this remark *after* the trial court stated that defendant was not permitted to testify as to what Lewis had said to her.

In closing arguments, the prosecution heavily focused on the fact that there was no valid reason for defendant to have been in possession of a firearm. The prosecution argued that defendant retrieved her firearm to intimidate Lewis into quickly leaving the home, not because defendant was in fear for her life. Defense counsel, in closing arguments, emphasized that defendant retrieved the firearm solely to protect herself and her children after being attacked. In rebuttal, the prosecution again maintained that the firearm could not possibly have been possessed for self-defense because defendant was not in danger when she retrieved her firearm.

---

[1] The dissent characterizes this statement as a conditional threat. However, no language in this threat demonstrates that it was conditional. Indeed, had this threat been conditional, it is unlikely that Lewis would have attacked defendant a second time in her bedroom without any mention of Lewis's cousin. Lewis's second attack against defendant supports the fact that Lewis's aggression was not contingent on mentions of his cousin.

After closing remarks, the trial court instructed the jury as follows: "At times during the trial I may have excluded evidence that was offered or stricken testimony that was heard, please do not consider those things in deciding the case, make your decision only on the evidence that I let in and nothing else." This would necessarily include the trial court's exclusion of defendant's testimony on direct examination when she tried to convey that Lewis threatened to kill her. Immediately following this instruction, the trial court told the jury, "Your decision should be based on all of the evidence regardless of which party presented it." This would seemingly include the testimony that defendant provided on her fifth recross-examination, where she said that Lewis threatened to kill her. The trial court also provided self-defense instructions to the jury, stating:

> A person has the right to use force to defend herself and/or another person under certain circumstances. If a person acts in lawful self-defense or in defense of others, her actions are justified and she is not guilty of an assault with a dangerous weapon, felonious assault, felony firearm, or domestic violence.

Defendant was ultimately convicted as charged. She was sentenced to three years' probation for her felonious-assault conviction, two years' imprisonment for her felony-firearm conviction with 149 days' jail credit, and 93 days, time served, for her domestic-violence conviction.

Defendant appealed her convictions in the Court of Appeals. On appeal, the prosecution conceded that its objection and the trial court's ruling were erroneous and that the statement was not hearsay. The Court of Appeals, in a split decision, affirmed defendant's convictions. *People v Nelson*, unpublished per curiam opinion of the Court of Appeals, issued August 31, 2023 (Docket No. 360860), p 1. The majority explained that

5

the trial court's error in sustaining the prosecution's hearsay objection was not outcome-determinative because defendant eventually introduced the threat on recross-examination, the jury was instructed to consider all evidence, and jurors are presumed to follow their instructions. *Id*. at 4, citing *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Judge HOOD dissented. He explained that Lewis's threat to defendant was central to defendant's self-defense theory, but she was prevented from presenting it to the jury. He acknowledged that defendant referred to the threat in a nonresponsive manner on recross-examination but that introducing the threat in such a manner and not having the threat mentioned any other time in the proceedings was of inadequate use to her defense. *Nelson* (HOOD, J., dissenting), unpub op at 4. And while the jury was instructed to consider all evidence, it was also instructed not to consider evidence that was "stricken." Judge HOOD concluded that, under the circumstances, these instructions were far from clear. He would have vacated defendant's convictions and remanded the case to the trial court for a new trial. *Id*. at 5.

Defendant appealed her convictions in this Court, and in lieu of granting leave to appeal, we ordered oral argument on the application, directing the parties to address:

> (1) whether the harmless error test in *People v Lukity*, 460 Mich 484 (1999), should be refined or amended, see generally *People v Parsley*, 500 Mich 1033, 1033 (2017) (LARSEN, J., concurring); and (2) whether—under the *Lukity* standard or otherwise—the defendant is entitled to relief for the trial court's erroneous exclusion on direct examination of the defendant's testimony regarding a threat made by the victim. [*People v Nelson*, 513 Mich 1053, 1053 (2024).]

6

## II. STANDARD OF REVIEW

"The decision whether evidence is admissible is within the trial court's discretion and should only be reversed where there is a clear abuse of discretion." *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (opinion by CAVANAGH, J.) (quotation marks and citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

Of note, the parties and the Court of Appeals all agree that Lewis's threat was not inadmissible hearsay. Hearsay is a "statement," other than one made by the declarant while testifying "at the current trial or hearing," offered "to prove the truth of the matter asserted in the statement." MRE 801(c). Defendant did not seek to introduce Lewis's threat to establish the truth of the matter asserted. See MRE 801(c). Instead, defendant sought to introduce Lewis's threat to demonstrate the effect that the statement had on her. Such testimony is not "offered for a hearsay purpose because its value does not depend upon the truth of the statement." *People v Lee*, 391 Mich 618, 642; 218 NW2d 655 (1974).

Defendant preserved the objection during trial and raised it in her direct appeal in the Court of Appeals. Preserved, nonconstitutional errors are governed by MCL 769.26, which provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

This Court interpreted the requirements of MCL 769.26 in *Lukity*, 460 Mich 484. There, this Court held that: (1) the "affirmatively appear[s]" language in the statute "creates a presumption that preserved, nonconstitutional error is harmless, which presumption may be rebutted by a showing that the error resulted in a miscarriage of justice," and (2) a miscarriage of justice requires a defendant to establish that "it was more probable than not that a preserved, nonconstitutional error" was outcome-determinative. *Id*. at 493-495.[2]

### III.  ANALYSIS

Central to defendant's self-defense theory was the reason she retrieved a firearm. Indeed, the prosecution in closing arguments repeatedly asserted that defendant had no need for a firearm because Lewis was no longer strangling her and he was preparing to leave the home. The prosecution argued that defendant merely used the firearm in an effort to intimidate Lewis into leaving the home faster.[3]

On the other hand, defendant alleges that she needed the firearm to protect herself, because she feared Lewis would kill her. Indeed, defendant sought to introduce Lewis's statement to demonstrate how the threat affected her state of mind. Instead, the jury simply

---

[2] Although this Court asked for briefing as to whether *Lukity* ought to be revisited, given our holding that defendant is entitled to relief under *Lukity*, we decline the opportunity to revisit our caselaw.

[3] The dissent explains that Lewis's threat was not necessary to support defendant's self-defense claim because defendant had testified as to the assaults. The dissent opines that testimony of Lewis's threat would be less compelling than the testimony defendant offered regarding the assaults. But this point is belied by the prosecution's own argument that defendant had no valid reason to possess the firearm because she was no longer in danger after the physical assaults had ended. The threat is what provides support for defendant's continued possession of the firearm. In this way, the prosecution's theory that defendant had no valid reason to possess the firearm becomes far less convincing when the continuing threat to her life is considered.

heard testimony that Lewis strangled defendant and pushed her into the bed. Although this testimony would have demonstrated that Lewis had exhibited violence toward defendant, testimony concerning these acts alone would not have sufficiently demonstrated to the jury why defendant was *in fear for her life*.[4]

Without the trial court's error, defendant's testimony would have consisted of Lewis's threat to kill her, along with two incidents of Lewis engaging in violence against her. A jury could have viewed defendant's decision to retrieve the firearm in the context that defendant believed that Lewis would continue to escalate the situation and that harm to her was both plausible and imminent. Without the threat being conveyed to the jury, the jury only knew that defendant had been attacked by Lewis but that the attacks had ended by the time defendant retrieved the firearm. The jury would not have known that defendant's act was in response to someone who had, in a short time span, both attacked her twice *and* expressly told her that he would end her life.

The prosecution and the Court of Appeals majority have not disputed that such a statement would have supported defendant's self-defense claim. Instead, the prosecution argues, and the Court of Appeals majority agreed, that the statement was admitted during defendant's recross-examination and that it was then adequately considered by the jury. We disagree.

---

[4] To be clear, we do not require defendant to show a threat of deadly force in order to support her defense. We acknowledge that defendant received a jury instruction on the use of nondeadly force. However, defendant's own testimony would have been that she was in fear of her life *because* her life was expressly threatened and Lewis's physical assaults against her had escalated. While defendant is not *required* to demonstrate this heightened fear, the threat provides context as to why defendant believed that Lewis's physical attacks would continue and why she felt as though she had to protect herself.

9

To start with the obvious, there is a difference in eliciting testimony during direct examination and cross-examination. On direct examination, defendant, with the aid of her counsel, would have the opportunity to present a complete theory of her defense to the jury. She would have been able to explain how such a threat affected her state of mind and how the threat, coupled with Lewis's violence toward her, swayed her actions. Such an opportunity is necessary when the jury essentially considers a near total credibility contest between two witnesses. Cf. *People v Douglas*, 496 Mich 557, 579; 852 NW2d 587 (2014) (explaining that when the " 'evidence essentially presents a one-on-one credibility contest between the victim and the defendant,' " improperly admitted evidence " 'may tip the scales against the defendant, which means that the error is more harmful' "), quoting *People v Gursky*, 486 Mich 596, 620-621; 786 NW2d 579 (2010).

In other words, when a jury is presented with competing narratives, an erroneous deprivation of a defendant's opportunity to present and support a central facet of the defense theory distorts a defendant's credibility. Here, defendant was only able to convey Lewis's threat to her as a non sequitur on her recross-examination. But the prosecution, on recross-examination, is hardly going to assist a defendant in establishing her own defense. As the record demonstrates, the prosecution in this case did not follow up in any fashion when defendant relayed to the jury what Lewis had said to her. Thus, the only opportunity that defendant had to establish the heart of her defense occurred during a nonresponsive exchange with the party seeking her conviction.

As a direct result, defense counsel did not refer to the threat in closing arguments to demonstrate that defendant was actually in fear for her life and that she was holding onto the firearm for protection. The trial court had expressly instructed both parties not to refer

10

to what Lewis had said. The trial court, on more than one occasion, told defendant not to testify as to Lewis's remarks. Had defense counsel attempted to work the threat into closing arguments, defense counsel would have been disobeying the trial court's multiple admonishments not to present evidence of Lewis's threat. In contrast, during closing arguments, the prosecution had the opportunity to paint the picture that defendant was not in fear at all but instead wanted to intimidate defendant. This was consequential. Without defendant's testimony, the evidence presented at trial was inadequate to demonstrate to the jury that defendant was confronted with a deadly threat that would justify her possession of the firearm. See *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) ("A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified [the defendant's] actions.") (quotation marks and citation omitted).

According to the prosecution, these errors are of no consequence because the trial court instructed the jury that its "decision should be based on all of the evidence regardless of which party presented it." Because jurors are presumed to follow their instructions, the Court of Appeals held that "defendant has failed to prove the trial court's failure to admit defendant's testimony on direct examination amounts to more than harmless error." *Nelson*, unpub op at 4, citing *Unger*, 278 Mich App at 235.[5] However, relying on this

---

[5] "Jurors are presumed to follow their instructions, and jury instructions are presumed to cure *most* errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted; emphasis added). But jury instructions do not cure all errors. See *People v Uribe*, 508 Mich 898, 899 (2021) (explaining that certain errors are "far more pernicious than a mere evidentiary error" such that a curative jury instruction is insufficient to erase the prejudice suffered by a defendant) (quotation marks and citation omitted); *People v Terry*, 489 Mich 907, 907 (2011) (holding that when the prosecution

presumption is overly simplistic here, where it was likely unclear to the jury how to apply the jury instructions given that the trial court also instructed the jury not to consider excluded evidence. When defendant attempted to tell the jury what Lewis said to her after he began to strangle her, the trial court prevented her testimony. Later, when instructing the jury, the trial court said, "[P]lease do not consider [excluded evidence] in deciding the case, make your decision only on the evidence that I let in and nothing else." When defendant mentioned Lewis's threat on recross-examination, no party made a motion regarding the statement, and the trial court did not address it. Yet during jury instructions, the trial court told the jury to consider all evidence regardless of which party presented the evidence. The testimony in question here had been excluded at one point during the trial but admitted at a later point in the trial. While the jury instructions that the trial court provided are not inherently in conflict, in this case, the jury was likely understandably confused as to whether it was allowed to consider defendant's testimony during recross-examination about Lewis's threat, given that this same testimony had been excluded during defendant's direct examination. We agree with Judge HOOD that "at best these instructions are unclear on how to handle testimony that was previously excluded, that came in even when it was not introduced, and was not the subject of a motion to strike or a motion to reconsider." *Nelson* (HOOD, J., dissenting), unpub op at 4.[6]

_____

introduced an improper question in an effort to elicit impermissible evidence, a curative instruction did not suffice to cure prejudice).

[6] The dissent notes that the jury did raise a question about an unrelated issue and could have done so with respect to the jury instructions. But the jury's inaction here is irrelevant to our analysis. Regardless of whether the jurors properly understood the conflict, the fact remains that jurors are presumed to abide by their instructions, which would have conflicted as applied to the facts in this case.

12

In short, the trial court's error here: (1) deprived defendant of a meaningful opportunity to support her claim of self-defense; (2) paved the way for the prosecution to argue that defendant possessed the firearm merely to intimidate Lewis; and (3) quite likely left the jury confused about what it could and could not consider during deliberations. Added together, considering that the case against defendant largely relied on a credibility contest between defendant and Lewis, we hold that these errors were more probably than not outcome-determinative.

Such a result comports with *Lukity*. As an application of the harmless-error standard of review, *Lukity* prevents retrials from occurring when there is other strong evidence of guilt apart from the complained-of error. See *Lukity*, 460 Mich at 495 ("The object of this inquiry is to determine if it affirmatively appears that the error asserted undermines the reliability of the verdict. In other words, the effect of the error is evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error.") (quotation marks, citation, and brackets omitted). Again, the jury was presented with a credibility contest. The trial court, in erroneously excluding defendant's testimony concerning Lewis's threat, both deprived defendant of the opportunity to present evidence that bolstered her defense and facilitated a pathway for the prosecution to argue that her defense was meritless. In a case where the jury was considering whom to believe, we hold that these errors were more probably than not outcome-determinative. Accordingly, the Court of Appeals committed error requiring reversal, and defendant is entitled to a new trial.

## IV. CONCLUSION

We conclude that the Court of Appeals majority erred by holding that the trial court's ruling was not outcome-determinative under *Lukity*. The threat was central to defendant's self-defense theory. Further complicating matters, the trial court provided the jury with instructions that did not make clear whether the jury could consider the threat after defendant mentioned it in passing in a fifth recross-examination. A presumption that jurors follow their instructions is not sufficient to cure prejudice when the jurors likely did not know whether they could consider the once-excluded evidence and when the trial court's error necessarily altered how the parties presented their arguments during trial. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the Wayne Circuit Court for a new trial.

Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

14

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                      No. 166297

NATALIE CHRISTINA NELSON,

      Defendant-Appellant.

_____

CAVANAGH, J. (*concurring*).

    I fully concur in the Court's decision to remand this case for a new trial. I write separately to emphasize a concern that has previously been raised, but not directly addressed, by this Court: whether this Court's interpretation of the standard of review for preserved, nonconstitutional errors under MCL 769.26 that we announced in *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999), should be revisited given its apparent inconsistency with the standard of review for ineffective assistance of counsel under *Strickland v Washington*, 466 US 668, 688; 104 S Ct 2052, 80 L Ed 2d 674 (1984).[1]

    The inconsistency is evident when examining the language of each standard. In *Lukity*, this Court held that a preserved, nonconstitutional error is reviewed "to determine whether it is *more probable than not* that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495 (emphasis added). If a nonconstitutional error is unpreserved, however, then it may form the basis of a claim for ineffective assistance of

_____

[1] See *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994) (adopting the *Strickland* test as the standard for ineffective assistance of counsel under Michigan's Constitution).

counsel. In contrast to the standard of review under *Lukity*, we review a claim of ineffective assistance of counsel to determine whether counsel's performance fell below an objective standard of reasonableness and whether, "but for counsel's deficient performance, there is a *reasonable probability* that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (emphasis added). As this Court has stated, there is a difference between "more probable than not" and a "reasonable probability." See *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004) ("A reasonable probability need not rise to the level of making it more likely than not that the outcome would have been different."), citing *Strickland*, 466 US at 693.[2] The distinction between these two standards has also recently been highlighted by Justice Jackson:

> We have repeatedly said that the "reasonable probability" standard is not the same as the "more likely than not" or "preponderance of the evidence" standard; it is a qualitatively lesser standard. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (collecting cases); see also [*United States v*] *Dominguez Benitez*, 542 U.S. [74, 83 n 9; 124 S Ct 2333; 159 L Ed 2d 157 (2004)]; *Strickler v. Greene*, 527 U.S. 263, 298, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (Souter, J., concurring in part and dissenting in part). In fact, it is "contrary to" our precedent to equate the " 'reasonable probability' " materiality standard with the more-likely-than-not standard. *Williams v. Taylor*, 529 U.S. 362, 405–406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

---

[2] Even though there may appear to be a difference between "probable" and "likely," this Court has held that, at least in the context of the discovery rule, the term "likely" is defined as "probable." *Moll v Abbott Laboratories*, 444 Mich 1, 22; 506 NW2d 816 (1993). Further, this Court has also held that a "more likely than not" standard is not any more difficult to apply than a "more probable than not" standard. *People v Tennyson*, 487 Mich 730, 743 n 8; 790 NW2d 354 (2010). Thus, it stands to reason that any discrepancy between a "more likely than not" standard and the "reasonable probability" standard would be the same as between a "more probable than not" standard and the "reasonable probability" standard.

. . . Indeed, it is unclear why *Strickland* would have spent the time it did considering but rejecting the "more likely than not" standard in favor of the "reasonable probability" standard for prejudice, [*Strickland*,] 466 U.S. at 693–694, 104 S.Ct. 2052, if courts could treat them as "effectively the same," [*Chinn v Warden, Chillicothe Correctional Institution*,] 24 F.4th [1096, 1103 (CA 6, 2022)]. [*Chinn v Shoop*, 589 US ___, ___; 143 S Ct 28, 28-29; 214 L Ed 2d 229 (2022) (Jackson, J., dissenting).]

It is for this same reason that Justice LARSEN also observed that the differences between these standards may counterintuitively incentivize a defendant to intentionally not preserve a nonconstitutional error because a "reasonable probability" standard has a lower threshold for recovery than a "more probable than not" standard. *People v Parsley*, 500 Mich 1033, 1033 (2017) (LARSEN, J., concurring). Thus, a defendant may be "better off on appeal for not having raised [the] claim in the lower courts than for having raised it." *Id*.

The difference between these two standards, however, is "slight and matters 'only in the rarest case.' " *Harrington v Richter*, 562 US 86, 111-112; 131 S Ct 770; 178 L Ed 2d 624 (2011), quoting *Strickland*, 466 US at 693, 697. This case is not one of those rare cases. Defendant has overcome the more onerous "more probable than not" standard because, as the majority opinion states, the trial court erroneously excluded defendant's testimony on direct examination and this error deprived defendant of the opportunity to sufficiently present her theory of self-defense. It is more probable than not that a different outcome would have resulted without the error. For that reason, it is unnecessary for this Court to address this issue in the instant matter. Therefore, I concur with the majority opinion.

Megan K. Cavanagh

3

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                    No. 166297

NATALIE CHRISTINA NELSON,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

     I agree that the trial court erred by excluding defendant's testimony regarding her

partner's alleged threat as hearsay on direct examination.  The prosecution concedes this

error.  I nonetheless disagree with the majority opinion's decision to reverse the judgment

of the Court of Appeals and remand the case for a new trial.  A new trial is not warranted

because it is not more probable than not that this error was outcome-determinative under

MCL 769.26 and *People v Lukity*.[1]  It is exceedingly clear that the jury heard on recross-

_____

[1] *People v Lukity*, 460 Mich 484; 596 NW2d 607 (1999).  Although this Court directed the
parties to address whether the harmless-error test set forth in *Lukity* should be refined or
amended, the majority opinion declines to consider this question.  I, too, would decline to
reconsider *Lukity*, both because I believe that the error here was not outcome-determinative
under any articulation of the harmless-error standard and because I believe that *Lukity* is
fully consistent with the language of MCL 769.26 and was therefore correctly decided.  In
her concurrence in this case, Justice CAVANAGH notes an "apparent inconsistency" with
the "more probable than not" *Lukity* standard and the "reasonable probability" standard of
review for claims of ineffective assistance of counsel under *Strickland v Washington*, 466
US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  On this point, Justice CAVANAGH echoes
the concerns expressed by Justice LARSEN in *People v Parsley*, 500 Mich 1033, 1033
(2017) (LARSEN, J., concurring), that "the differences between these standards may
counterintuitively incentivize a defendant to intentionally not preserve a nonconstitutional
error because a 'reasonable probability' standard has a lower threshold for recovery than a

examination the very testimony that was erroneously excluded by the trial court. Aside from the evidence relating to the threat made toward defendant, the jury also heard even more compelling evidence supporting defendant's self-defense theory in the form of defendant's testimony that her partner physically attacked her. Despite hearing this evidence, the jury still convicted her. Contrary to the speculative conclusions asserted in the majority opinion, I conclude it is highly unlikely that admission of the verbal conditional threat on direct examination would have resulted in defendant's acquittal where extensive testimony of a physical assault and admission of the conditional threat in recross-examination did not. I would affirm the judgment of the Court of Appeals.

## I. BACKGROUND

In September 2019, defendant was living with Aaron Lewis. On September 10, 2019, while using Lewis's phone in their bedroom, defendant saw that Lewis had received

---

'more probable than not' standard." Justice LARSEN, and now Justice CAVANAGH, speculate that a defendant may be "better off on appeal for not having raised [the] claim in the lower courts than for having raised it." *Id*.

This concern is greatly overstated. When considering an ineffective-assistance claim, a defendant must first establish that counsel performed deficiently before reaching the prejudice prong, a challenging task given that an attorney's strategic decisions are entitled to deference. See *Strickland*, 466 US at 687, 690-691. In converse, a defendant need only show an error to reach the prejudice inquiry with a preserved claim of error. It makes logical sense that the prejudice inquiry might be more lenient for an ineffective-assistance claim where the initial showing of deficient performance is difficult to establish. I am therefore hard-pressed to conclude that it is advantageous for a defendant to intentionally decline to preserve an error so that the error could later be appealed under the ineffective-assistance-of-counsel framework. In any event, because the *Lukity* standard derives from the language of MCL 769.26, Justice CAVANAGH's concerns are more appropriately directed to the Legislature. Because all the justices agree that we need not revisit *Lukity* in this case, albeit for different reasons, I will save my defense of that decision for a later day.

2

a call from his cousin, who defendant alleges is a child molester. Defendant was upset that Lewis was talking to his cousin, and the two began to argue.

According to Lewis, defendant was angered at what she saw in his phone and grabbed him by the neck, scratched him, tried to hit him, and threw an ashtray at him. Lewis testified that, while he was packing his things to leave, defendant left the room and came back with a gun pointed at him. Lewis testified that defendant followed him to the front door with the gun, kicking him in the back as he exited the home.

According to defendant, when she confronted Lewis about what she saw on his phone, he became very upset and stated: "Don't ever ask me about my fucking cousin ever again. I will kill you." Defendant testified that Lewis pushed her, jumped on her, and choked her to the point that she could not breathe. Defendant testified that she scratched Lewis and demanded that he get off her, at which point her son, Travion, came into the room. Lewis then stopped choking defendant and began arguing with Travion. Defendant got off the bed to separate them. Defendant testified that she continued to tell Lewis to leave, and Lewis began packing. According to defendant, Lewis then grabbed her and slung her on top of the bed rail. At this point, defendant stated that she reached for her handgun on the floor and brandished it. Defendant testified that she pulled the gun out because she could not breathe when Lewis choked her and because she was scared of Lewis and fearful for her life. Lewis finished packing, and defendant followed him with the gun down the stairs to the front door. Defendant did not recall kicking Lewis.

3

Defendant was ultimately charged with felonious assault,[2] possession of a firearm during the commission of a felony (felony-firearm),[3] and domestic violence.[4]

At trial, the prosecution argued that defendant unreasonably brandished her gun at Lewis because she wanted him to get out of the house more quickly, not in self-defense or defense of her children. Lewis denied that he choked defendant and testified that defendant was the aggressor. In contrast, defendant asserted at trial that she acted to defend herself and her children.

During defendant's direct examination, she sought to testify about Lewis's verbal threat to kill her. The prosecution objected, arguing that whatever she was going to convey was inadmissible hearsay. The trial court sustained the objection. On recross-examination, however, defendant testified that Lewis threatened to kill her while he was choking her:

> *Q.* So when you came in the house you immediately asked to see [the victim's] telephone?
>
> *A.* No. I seen [the cousin's] name in the phone. And I asked him. I said, "Did Jay call you?" And that's when he jumped on top of me and started to choke me. And he was saying, "Don't ever ask me about my fucking cousin ever again. I will kill you."

The prosecution did not object to this statement.

The jury found defendant guilty as charged. Defendant was sentenced to three years of probation for felonious assault, two years' imprisonment for felony-firearm with 149 days of jail credit, and time served for domestic violence.

---

[2] MCL 750.82.

[3] MCL 750.227b.

[4] MCL 750.81(2).

4

Defendant appealed her convictions in the Court of Appeals, arguing, in pertinent part, that the trial court erred by excluding her testimony regarding the threat made by Lewis. In an unpublished per curiam opinion, the Court of Appeals affirmed defendant's convictions.[5] The panel unanimously agreed with defendant that the trial court erred by finding the disputed testimony hearsay, but a majority held that any error was not outcome-determinative. In dissent, Judge HOOD disagreed with the latter holding and would have vacated defendant's convictions and remanded the case for a new trial.

Defendant sought leave to appeal in this Court, and we ordered oral argument on the application, asking the parties to consider, in part, whether "defendant is entitled to relief for the trial court's erroneous exclusion on direct examination of the defendant's testimony regarding a threat made by the victim."[6] A majority of this Court now holds that "the trial court's failure to allow defendant to present this testimony about her self-defense theory, coupled with the jury's likely confusion regarding whether it could consider the statement at all, amount to errors that more probably than not were outcome-determinative under *Lukity* that require reversal."

## II. STANDARD OF REVIEW

MCL 769.26 applies to the preserved, nonconstitutional error in this case and states as follows:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of

---

[5] *People v Nelson*, unpublished per curiam opinion of the Court of Appeals, issued August 31, 2023 (Docket No. 360860).

[6] *People v Nelson*, 513 Mich 1053, 1053 (2024).

misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

In *Lukity*, this Court explained that this statute "creates a presumption that preserved, nonconstitutional error is harmless," which may be rebutted where a defendant demonstrates that "it was more probable than not that a preserved, nonconstitutional error" was outcome-determinative.[7]

## III. ANALYSIS

Defendant argued at trial that she was acting in self-defense and in defense of her children when she brandished a gun during the argument with Lewis. MCL 780.972(2) provides the requirements for self-defense and defense of others using other-than-deadly force:

An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual.

Once a defendant raises the issue of self-defense and "satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist," the prosecution must "exclude the

---

[7] *Lukity*, 460 Mich at 493-495.

6

possibility" of self-defense beyond a reasonable doubt.[8]   The trial court in this case provided the following self-defense instruction to the jury:

> A person has the right to use force to defend herself and/or another person under certain circumstances.  If a person acts in lawful self-defense or in defense of others, her actions are justified and she is not guilty of an assault with a dangerous weapon, felonious assault, felony firearm, or domestic violence.

I agree with the majority opinion and with the Court of Appeals that the trial court erred by excluding the evidence of Lewis's purported threat on direct examination as inadmissible hearsay.  Defendant did not seek to introduce Lewis's threat for the truth of the matter asserted.[9]   Instead, the threat was offered for its effect on defendant's mental state as relevant to her self-defense argument.  The trial court therefore erred by sustaining the prosecution's objection that this testimony constituted hearsay.  But I disagree with the majority opinion that defendant's inability to introduce the threat on direct examination constituted an error requiring reversal under MCL 769.26.

From the outset, I seriously question the importance of Lewis's threat to defendant's claim of self-defense.  Defendant alleges that Lewis stated the following during the physical assault: " 'Don't ever ask me about my fucking cousin ever again.  I will kill you.' "  In my view, this warning consists of a type of conditional threat, as Lewis was not threatening to kill defendant in the moment, but at some time in the future on the occurrence of a predicate—defendant inquiring about the victim's cousin.  It is questionable that this

---

[8] *People v Dupree*, 486 Mich 693, 709-710; 788 NW2d 399 (2010) (quotation marks and citation omitted).

[9] See MRE 801.

7

conditional threat could reasonably place defendant in fear of *imminent* harm rather than future, contingent harm.[10] Accordingly, the majority opinion's characterization of Lewis's alleged threat as significantly strengthening defendant's self-defense theory is vastly overstated.

Even accepting the interpretation of Lewis's threat adopted in the majority opinion, I struggle to conclude that the initial erroneous exclusion of the evidence was outcome-determinative in this case where the evidence was nonetheless introduced to the jury at trial. Defendant was permitted to refer to Lewis's threat during recross-examination, where the following exchange occurred:

> *Q.* So when you came in the house you immediately asked to see Mr. Lewis' telephone?
>
> *A.* No. I seen his [cousin's] name in the phone. And I asked him. I said, "Did Jay call you?" And that's when he jumped on top of me and started to choke me. And he was saying, "Don't ever ask me about my fucking cousin ever again. I will kill you."

The prosecution never moved to strike this testimony, and therefore this testimony remained part of the record considered by the jury. Thus, the jury ultimately heard the same evidence that defendant sought to introduce on direct examination. The majority opinion makes much of the fact that this crucial evidence was not presented to the jury until recross-examination. The majority opinion suggests that evidence produced on cross-examination and recross-examination is less impactful on a jury than evidence produced on direct examination. But there is no authority for such a proposition, which runs contrary

---

[10] See MCL 780.972(2) (requiring that the "unlawful use of force by another individual" be "imminent" for self-defense to be justified).

8

to the experience and intuition of litigators and trial judges alike. Indeed, it is often the case that crucial evidence is presented, developed, and refined with each round of interrogation through the adversarial process. Evidence presented on redirect and recross-examination is generally limited to the scope of the prior round of examination. Here, the crucial testimony came out in the fifth round of examination, which clearly focused the jurors on the intricacies of the evidence presented. And while the law presumes that jurors pay close attention to all evidence presented at trial, there can be little doubt that by the time a witness is subject to a fifth round of examination, jurors are laser-focused on the most critical aspects of the witness's testimony, as developed through the adversarial process.

In any event, the jurors were plainly instructed to consider all the evidence when reaching their verdict, which would include evidence presented on both direct and cross-examination.[11] Properly framed, defendant's claim is not that her testimony was excluded; it is that she was unable to admit the evidence in the precise manner that she wished. But defendant is entitled to a fair trial, not a perfect trial.[12] I simply cannot conclude that

---

[11] The trial court instructed the jury that its "decision should be based on all of the evidence regardless of which party presented it." As noted by the majority opinion, there is a presumption that jurors will follow their instructions. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998).

[12] *People v Miller*, 482 Mich 540, 559-560; 759 NW2d 850 (2008) ("[A litigant] is entitled to a fair trial but not a perfect one for there are no perfect trials.") (quotation marks and citation omitted; alteration in original). The majority opinion places much weight on the fact that defendant was not able to effectively use Lewis's threat to assist her defense, noting that the prosecution, on recross-examination, is hardly going to assist a defendant in establishing her own defense. And like the Court of Appeals dissent, the majority opinion suggests that defense counsel was precluded from considering Lewis's statement in closing arguments, opining that "the only opportunity that defendant had to establish the heart of her defense occurred during a nonresponsive exchange with the party seeking her

defendant's inability to introduce the threat in more detail on direct examination constituted an error requiring reversal under MCL 769.26.

In concluding to the contrary, the majority opinion emphasizes that the jury "was likely understandably confused as to whether it was allowed to consider defendant's testimony during recross-examination about Lewis's threat, given that this same testimony had been excluded during defendant's direct examination." But in full context, there is nothing in the record to show juror confusion. On direct examination, the prosecution objected to defense counsel's question before defendant was able to testify about the threat that Lewis made against her. Defendant only stated, "Aaron said, 'Mother fucker don't ask me' " before the prosecution objected. Defendant never stated the words "I will kill you" on direct examination. The jury therefore did not learn the substance of the testimony that was subject to exclusion. This greatly reduces the likelihood that the jury would conclude it was not permitted to consider defendant's statement made during recross-

conviction. As a direct result, defense counsel did not refer to the threat in closing arguments to demonstrate that defendant was actually in fear for her life and that she was holding onto the firearm for protection." I disagree that defendant was denied the opportunity to better emphasize the threat that came out in recross-examination. After defendant referenced the threat on recross-examination, defense counsel did not seek any follow-up, nor did counsel do anything to highlight this testimony. And I see no legal reason why defense counsel could not have mentioned the threat in closing arguments. Again, the prosecution did not object to this testimony. Evidence admitted without objection is entitled to consideration, and nothing prevents a party from arguing it. See *People v Maciejewski*, 68 Mich App 1, 3-4; 241 NW2d 736 (1976). Defendant does not argue that defense counsel was ineffective for failing to address Lewis's threat in closing arguments. I question whether defense counsel's decision not to attempt to more persuasively use the admitted evidence should contribute to that error being labeled outcome-determinative.

10

examination that Lewis threatened to kill her. This evidence was admitted without objection and was therefore properly before the jury.

Notably, our court rules permit jurors to submit "written questions about the jury instructions that arise during deliberations."[13] In its instructions to the jury in this case, the trial court stated, "If you have questions about any of the jury instructions before you begin deliberations or questions about the instructions that may arise during your deliberations you may submit them in writing, knock on the jury room door and one of the sheriffs will come and collect them from you." The court did receive a note from the jury requesting copies of the pictures that were used for evidence. But the jury did not submit a question asking the trial court whether it was permitted to consider Lewis's conditional verbal threat. This greatly undermines the majority opinion's hypothesis that the jury was confused as to

---

[13] MCR 2.513(N)(2) states:

Solicit Questions about Final Instructions. As part of the final jury instructions, the court shall advise the jury that it may submit in a sealed envelope given to the bailiff any written questions about the jury instructions that arise during deliberations. After orally delivering the final instructions, the court shall invite the jurors to ask any questions in order to clarify the instructions before they retire to deliberate.

If questions arise, the court and the parties shall convene, in the courtroom or by other agreed-upon means. The question shall be read into the record, and the attorneys shall offer comments on an appropriate response. The court may, in its discretion, provide the jury with a specific response to the jury's question, but the court shall respond to all questions asked, even if the response consists of a directive for the jury to continue its deliberations.

whether the disputed testimony was admitted or struck. Had the jury needed clarity on this point, it was able and seemingly more than willing to ask for it.[14]

Finally, I cannot conclude that the trial court's error was more likely than not outcome-determinative because there are strong indicators that the jury would have convicted defendant even if the testimony in question had been admitted on direct examination. This is because Lewis's alleged conditional threat constituted far less compelling evidence of defendant's need to defend herself than defendant's testimony— introduced on direct examination—that Lewis physically assaulted and choked her.

Defendant testified that she brandished the weapon because Lewis was physically attacking her. Specifically, she testified that Lewis "jumped on top of me and started to choke me" and that Lewis kept "slinging" her on top of her bed rail. At that point, defendant testified that she reached underneath the bed, grabbed her weapon, and again asked Lewis to leave. When asked why she pulled the gun out, defendant replied: "He choked me twice. I can't breathe and I'm scared." When asked what she was scared of, defendant responded, "I'm fearful for my life." When again asked why she pulled out the firearm, defendant said: "I was so scared. I didn't want him to choke me [any] more. I didn't want him touching my children." Defendant also testified that Lewis attempted to fight her son, and her son testified that there were red marks on his mother's neck. Defense counsel specifically requested—and received—the self-defense instruction based on this testimony that defendant was scared after being choked and "fearful of her son being

---

[14] Note that, when given the opportunity to ask questions during the testimony of the witnesses, the jury had many questions for the court, none of which related to Lewis's conditional threat.

attacked by [Lewis]." Thus, the testimony at trial, if believed, would have more than sufficed for the jury to find that defendant brandished the weapon in defense of herself and her children as the result of a physical attack.[15]

The testimony regarding this physical assault constituted far more persuasive support for defendant's self-defense theory than did Lewis's conditional threat. Indeed, defendant's testimony pertaining to the physical attack suggested an *immediate* threat of bodily harm and not a threat of hypothetical future harm. Yet the jury still deemed defendant's version of events noncredible and convicted defendant, necessarily discounting her self-defense claim. Because the jury was not convinced of the need for self-defense by defendant's testimony that Lewis physically attacked her, it is very unlikely that the less compelling evidence of Lewis's conditional threat of future harm would have made a difference had it been elicited on direct rather than recross-examination.[16]

In concluding to the contrary, the majority opinion operates under the mistaken understanding that Lewis's threat was necessary to defendant's self-defense theory to show

---

[15] This evidence, if believed by the jury, would be powerful and direct evidence of self-defense. That such evidence existed in the trial record may well explain why defense counsel did not highlight during closing arguments the conditional threat, which was not a threat of immediate and imminent harm. But after review of the entire record presented at trial, the jury obviously did not find defendant's claims of direct harm credible. Defendant cannot now use the failure to develop the evidence of the conditional threat as an appellate parachute.

[16] I note that it is also possible that the jury convicted defendant because it found her to be the initial aggressor. If the jury found Lewis's testimony more credible than defendant's, which it appears it did, defendant's physical attack of Lewis before she drew her gun would have made self-defense unavailable to her. *People v Riddle*, 467 Mich 116, 126-127; 649 NW2d 30 (2002) (indicating that a defendant asserting self-defense cannot be the initial aggressor).

13

that defendant feared for her life. In emphasizing the importance of Lewis's threat to the defense, the majority opinion says that while defendant's testimony describing Lewis's physical attack "would have demonstrated that Lewis had exhibited violence toward defendant, testimony concerning these acts alone would not have sufficiently demonstrated to the jury why defendant was *in fear for her life*." The majority opinion emphasizes that, without testimony of the threat, "the evidence presented at trial was inadequate to demonstrate to the jury that defendant was confronted with a deadly threat that would justify her possession of the firearm." Not only is this premise factually incorrect, but it is also irrelevant to the legal issue before us.

Factually, as noted earlier, defendant indeed testified that she feared for her life because she was physically attacked by Lewis. Defendant testified that she brandished the weapon because "[Lewis] choked me twice. I can't breathe and I'm scared. . . . I am scared of [Lewis]. . . . I'm fearful for my life." Again, the self-defense instruction was requested and given based on the fear that defendant attributed to the physical assault. Relatedly, the majority opinion reasons that "[w]ithout the threat being conveyed to the jury, the jury only knew that defendant had been attacked by Lewis but that the attacks had ended by the time defendant retrieved the firearm." Again, I seriously question whether Lewis's threat was capable of placing defendant in imminent fear, and I also conclude it unlikely that the threat could have placed her in greater fear of imminent attack than the physical attack itself, even had it ended by the time defendant grabbed her weapon. But it is noteworthy that defendant did not testify that the attack had ended before she brandished the weapon. She explained that she grabbed the gun while defendant was "slinging [her] on top of" her high bed rail. The majority opinion's assertion that the threat of the physical attack had ended by the time

14

that defendant grabbed the weapon is undermined by defendant's own testimony that she brandished the weapon because she was in fear for her life. Accordingly, I disagree with the majority opinion that defendant's testimony as to the physical attack itself would not have sufficiently shown that defendant reasonably feared for her life.

But in any event, this is not the proper inquiry. After a conversation with defense counsel, the trial court read the jury the nondeadly-force instruction, not the deadly-force instruction, informing the jury that defendant "ha[d] the right to use force to defend herself and/or another person under certain circumstances." This is not a case where defendant was required to show a threat of deadly force to support her self-defense theory.[17] The instruction did not require defendant to show that she honestly and reasonably believed that she brandished the weapon to "prevent the imminent death of" herself or her children.[18] Because the jury did not need to believe that defendant reasonably feared for her life, I disagree with the majority opinion that testimony of Lewis's conditional threat was needed in addition to the testimony of the physical assault for the jury to believe defendant's claim of self-defense. Defendant's testimony pertaining to the assault itself surely would have been sufficient to establish that defendant acted to defend herself had the jury deemed defendant's story credible. Consequently, the majority opinion's belief that direct

---

[17] See MCL 780.972(2) (providing that an individual who has not or is not engaged in the commission of a crime "may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual *from the imminent unlawful use of force* by another individual") (emphasis added).

[18] See MCL 780.972(1)(a).

15

testimony of Lewis's threat was needed to justify defendant's heightened level of fear is misplaced.

## IV. CONCLUSION

In sum, a review of the record establishes that the trial court's initial erroneous exclusion of Lewis's threat was not outcome-determinative under MCL 769.26, both because the excluded evidence was eventually submitted to the jury and because the jury heard extensive testimony about the purported violent assault by Lewis yet still found that defendant did not act in lawful self-defense. It appears obvious that this case constituted a pure credibility contest and that the jury simply believed Lewis's version of events over defendant's. This Court should not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses.[19] Ultimately, the admitted evidence supported the jury's verdict, and there is no reason to believe that the outcome would probably have been different had the testimony of Lewis's threat been admitted on direct examination. I would affirm the judgment of the Court of Appeals.

Brian K. Zahra
Elizabeth T. Clement

THOMAS, J., did not participate because the Court considered this case before she assumed office.

---

[19] See *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992).

16